IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CORROSION TECHNOLOGY INTERNATIONAL, LLC ) ) ) Plaintiff, ) v. ) ) ANTICORROSIVE ) INDUSTRIALES LTDA, et al., ) ) Defendants. ) _____ ) | No. 1:10-cv-915 (AJT/TCB) |

## **MEMORANDUM OPINION**

This matter is before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) and for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6). Doc. No. 14. Upon consideration of the memoranda and exhibits submitted by the parties, the arguments of counsel at the hearing held on June 17, 2011, and for the reasons stated below, the Court finds that Plaintiff Corrosion Technology International, LLC has not made a *prima facie* showing that this Court has personal jurisdiction over the Defendants, and this action may not proceed in this Court on the *in personam* claims. The Court finds, however, that it is in the interest of justice to transfer Plaintiff's *in personam* claims to the Western District of Pennsylvania pursuant 28 U.S.C. § 1406(a). The Court will therefore transfer this action to the Western District of Pennsylvania and proceed in this Court only on Plaintiff's *in rem* action under the Anticybersquatting Consumer Protection Act , 15 U.S.C. § 1125(d)(2) pertaining to the domain name "ctiancor.com."

## I. BACKGROUND

On August 16, 2010, Plaintiff Corrosion Technology International, LLC ("CTI"), a citizen of Nevada, filed a complaint against the following Chilean entities or individuals: Anticorrosives Industriales Ltda. ("Ancor"), Tecmin, S.A. ("Tecmin"), Ancor Tecmin, S.A. ("Ancor Tecmin"), and Marcello Migone (collectively "Defendants"), as well as the domain name ctiancor.com ("Domain Defendant"). Plaintiff and Defendants are competitors in the business of designing and manufacturing electrolytic refining cells and associated equipment used in the production of nonferrous metals. The Complaint asserts the following claims: (1) violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(1) (in personam) and § 1125(d)(2) (in rem) (Counts I & V); (2) violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count II); (3) breach of contract (Count III), and (4) contempt of court based on orders issued by the United States Bankruptcy Court for the Western District of Pennsylvania (Count IV).

On May 16, 2011, Defendants filed the motion currently before the Court, and on May 31, 2011 Plaintiff filed its opposition, along with an affidavit from Gerald J. Gustas and certain documentary exhibits. On June 3, 2011, Defendants filed a reply with an affidavit from Victor M. Vidaurre. A hearing was held on June 17, 2011.

## II. RELEVANT FACTS

In 1997, CTI entered into a joint venture with Ancor pursuant to a master agreement. In 1998, the CTI-Ancor joint venture ("CTI-Ancor") purchased the domain name "ctiancor.com," the named *in rem* defendant in this case, and registered it with Network Solutions, LLC ("NSI"), a limited liability company with a principal place of business in Herndon, Virginia, pursuant to a

2

Registration Agreement ("NSI Registration Agreement").[1] Compl. ¶¶ 11- 12. By order dated April 13, 2004, the United States Bankruptcy Court for the Western District of Pennsylvania ("Bankruptcy Court") terminated the CTI-Ancor joint venture and approved a Compromise and Settlement Agreement ("2004 Agreement") between the parties ("the 2004 Bankruptcy Order").[2] Compl. ¶ 15; Doc. No. 1, Ex. C. Despite the 2004 Agreement, disputes arose between the former joint venture partners over the allocation and use of joint venture assets. Specifically, Defendants allegedly continued to hold themselves out as CTI-Ancor in contravention of the 2004 Bankruptcy Order. Compl. ¶ 30. In response, CTI brought a motion in the Bankruptcy Court to enforce the 2004 Bankruptcy Order. Compl. ¶ 31. On February 2, 2005, the Bankruptcy Court granted CTI's motion ("the 2005 Bankruptcy Order") requiring all parties to comply with its 2004 Bankruptcy Order including its obligations to refrain from any use of intellectual property that was owned by the other party. Sometime in 2005, Ancor and Tecmin formed a new joint venture, Ancor Tecmin S.A, ("Ancor Tecmin"), which competes with CTI in the business of designing and manufacturing electrolytic refining cells and associated equipment used in the production of nonferrous metals.

Following the 2005 Bankruptcy Order, on September 28, 2005, no doubt hoping to resolve the continuing dispute, CTI, Ancor, and Ancor Tecmin entered into a Settlement Agreement ("2005 Agreement"). Doc. No. 1, Ex. E. The 2005 Agreement incorporated the 2005 Bankruptcy Order and agreed on the actions and procedures the parties would take to comply with the 2005 Bankruptcy Order. Specifically, the 2005 Agreement stipulated that

---

[1] Marcello Migone was listed as the technical contact for the ctiancor.com domain name.

[2] The bankruptcy proceedings involved many companies related to CTI, including Global Industrial Technologies, Inc., the debtor who appears to have owned CTI. For simplicity, the Court refers to only CTI and Ancor, the two entities relevant to this proceeding.

Ancor would immediately stop using the CTI name, logo or mark in any form, including the CTI-Ancor trade name for any commercial or non-commercial purpose. Compl. ¶ 35; Doc. No. 1, Ex. E, ¶ 4.1. The 2005 Agreement stipulated that Ancor was to maintain the existing domain name "ctiancor.com" and ensure that the website address would display agreed upon information by the parties.[3] On this point, Paragraph 4.4 of the 2005 Agreement states:

> On or before October 15, 2005 ANCOR will take actions required to have, the www.ctiancor.com web address lead to a single page informing termination [sic] of the *former* Master Agreement and allowing visitors to branch off to CTI's or ANCOR's new web sites . . . . Future changes to this page must be agreed between CTI and ANCOR, or their successor companies.

Doc. No. 1, Ex. E (emphasis in original).

Defendants initially complied with their obligations. However, beginning in 2009, on multiple occasions, Defendants allegedly linked the website "ctiancor.com " to the Defendants' Ancor Tecmin joint venture website, which operates in competition with CTI's current business operations. Compl. ¶¶ 40-41. CTI alleges that Ancor Tecmin joint venture and its website, ancortecmin.com, are not local to Chile, but global in nature and function in a global market. According to CTI's allegations, Ancor Tecmin allegedly describes itself on its website as a "global leader" whose "products are installed and operating in more than 20 countries in 4 continents, with a global market share above 70%." In addition to its Spanish language site, ancortecmin.com is available in English and not only allows users to contact and communicate through its website, but also contains a customer "extranet" that allows customers to download specific documents, including drawings, specifications, and so forth from its site. According to the sworn affidavit of Victor M. Vidaurre, submitted by the Defendants in support of the Motion,

---

[3] Since 1998, Defendants have hosted, and continue to host, the "ctiancor.com" website on their own servers in Chile, and maintains and make any changes to the ctiancor.com website entirely in Chile. There is no need to contact NSI to make changes to the ctiancor.com website [Doc. No. 23 at 1].[3]

between August 2007 through May 2011, the website ancortecmin.com received 16,056 visits, of which 757 (4.71% of total) came from the United States. Viduarre Aff'd, Doc. No. 19-1. Of the 757 visits from the United States, 24 visits came as referrals from ctiancor.com, and of the 24 referrals from ctiancor.com, only one came from the state of Virginia. *Id.* The one referral from the state of Virginia did not result in any sale or further development of a client relationship. *Id.*

### III. LEGAL STANDARD

CTI premises personal jurisdiction in this District based on a forum selection clause and Defendants' contacts with Virginia. Defendants' challenge based on a forum selection clause is properly construed as a motion to dismiss on the basis of improper venue under Federal Rule of Civil Procedures 12(b)(3).[4] *Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006); *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 282 n. 11 (4th Circ. 2009) (holding that valid forum selection clauses may act as waivers to objections to personal jurisdiction).[5] Once venue is challenged, plaintiff bears the burden of showing that

---

[4] Both the Plaintiff and the Defendants analyze the motion to dismiss as to the forum selection clause under Fed. R. Civ. P. 12(b)(2) rather than under Fed. R. Civ. P. 12(b)(3).

[5] It is unresolved in the Fourth Circuit whether state or federal law applies to the analysis. Under Virginia law, forum selection clauses "are *prima facie* valid and should be enforced" unless they are "unfair or unreasonable, or are affected by fraud or unequal bargaining power." *Paul Business Systems, In. v. Canon U.S.A., Inc.*, 240 Va. 337 (1990). Under federal law, a forum selection clause can be enforced unless it is unreasonable. A forum selection clause is unreasonable where (1) it was the result of fraud or overreaching; (2) trial in the contractual forum would be so gravely difficult and inconvenient for the complaining party that he would for all practical purposes be deprived of his day in court; or (3) enforcement would contravene a strong public policy of the forum in which suit is brought." *Pee Dee Health Care, P.A. v. Sanford*, 509 F.3d 204, 213-14 (4th Cir.2007), *citing M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15-18 (1972) (internal quotation marks and citations omitted). Here, resolving which law to apply is unnecessary because the Court reaches the same decision under either. *See Rice Contracting Co. v. Callas Contractors, Inc.*, 1:08cv1163 (LMB), 2009 WL 21597, at *3 (finding it "irrelevant" whether federal or state law applies when deciding whether to enforce a forum selection clause in a diversity case "because the federal and Virginia standards are substantially the same").

venue is proper. *See Bartholomew v. Va. Chiropractors Ass'n, Inc.*, 612 F.2d 812, 816 (4th Cir. 1979), *overruled on other grounds by Ratino v. Med. Serv. of D.C.*, 718 F.2d 1260 (4th Cir. 1983); *Rice Contracting Corp. v. Callas Contractors, Inc.*, No. 1:08-cv-1163, 2009 WL 21597, at * 1 (E.D. Va. Jan. 2, 2009).

Defendants' challenge to personal jurisdiction based on grounds other than the forum selection clause is considered under Federal Rule of Civil Procedure 12(b)(2), under which the plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence. *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). If, however, as in the case here, the court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff need prove only a *prima facie* case of personal jurisdiction. *See Mylan Labs., Inc. v. Akzo, N.V.* 2 F.3d 56, 60 (4th Cir. 1993). In deciding whether the plaintiff has proved a *prima facie* case, "the court must construe all relevant pleading allegations in lights most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676; *Brooks v. Motsenbocker Advanced Devs., Inc.*, 242 F. App'x. 889, 890 (4th Cir. 2007).

## IV. ANALYSIS

CTI asserts two independent bases for personal jurisdiction over the non-resident Defendants. First, CTI argues that pursuant to the forum selection clause in the NSI Registration Agreement for the domain name "ctiancor.com," Defendants agreed to submit to the jurisdiction of this Court. Second, Plaintiff alleges that its claims arise from Defendants' actual contacts with Virginia. The Court addresses each argument in turn.

### A. Forum Selection Clause

The first issue is whether the forum selection clause in the NSI Service Agreement between CTI-Ancor and NSI waives Defendants' objections to personal jurisdiction in this Court. Defendants argue that they did not consent to jurisdiction in this Court under the NSI Registration Agreement because they never entered into the NSI Registration Agreement, but merely assumed the responsibility of maintaining the ctiancor.com domain name pursuant to the 2005 Agreement between CTI, Ancor, and Ancor Tecmin.[6] CTI argues, however, that Defendants have consented to jurisdiction in this Court in the NSI Registration Agreement as agents of CTI-Ancor. The Court need not resolve whether or in what capacity any of the Defendants are bound by the forum selection clause because the Court concludes that the parties' dispute is outside the scope of the forum selection clause.[7]

Section 7 of the NSI Service Agreement, Version 8.6 states:

> For the adjudication of any disputes brought by a *third party* against *you* concerning or arising from your use of a domain name registered with us or your use of our domain name registration services, you (but not Network Solutions) agree to submit to subject matter jurisdiction, personal jurisdiction and venue of the United States District Court for the Eastern District of Virginia, Alexandria Division and the courts of your domicile.

---

[6] Defendants, individually, are not parties to the NSI Registration Agreement executed by and between the former CTI-Ancor joint venture and NSI.

[7] CTI did not provide a copy of the forum selection clause in the NSI Service Agreement, as it existed in 1998 when the domain name ctiancor.com was first registered, or 2008, when the registration was renewed. Rather, Plaintiff provides two versions of the NSI Service Agreement, one that was updated on September 27, 2004, Version Number 7.2, and one, on August 2010, Version Number 8.6. *See* Gustas Aff., Ex. 3 ¶ 1, Doc. No. 18-5; Doc. No. 1, Ex. B. The forum selection clauses in Version 7.2 and Version 8.6 display differences. Nevertheless, the Court will assume, as plaintiff contends, that the 2004 Version of the forum selection clause is the operative version as reflected in the NSI Service Agreement, Version 8.6.

Doc. No. 1, Ex. B (emphasis added). The forum selection clause, by its terms, applies only to disputes brought by third parties against an individual that is a party to the NSI Registration Agreement and does not apply to disputes between two parties who are direct signatories to the Agreement. Here, the signatory to the NSI Registration Agreement is CTI-Ancor. CTI asserts that "you" in the forum selection clause refers to the joint venture CTI-Ancor, and thus, Defendants are subject to the Agreement as agents of the joint venture.[8] Based on this position, CTI also asserts that it is "equally bound by the forum-selection clause" and assumes the "rights, obligations and liabilities under the joint venturer's [Registration] Agreement." Doc. No. 18 at 10. The problem with CTI's position is even assuming that the Defendants are included within the meaning of "you" in the NSI Registration Agreement, so too is CTI. For that reason, and as CTI confirmed at the hearing on the Motion, CTI is not also a "third party" within the meaning of the forum selection clause. There simply is no third party in the dispute to which the forum selection clause can apply.

### B. Substantive Personal Jurisdiction

Next, the Court must consider whether Plaintiff has made a *prima facie* showing of personal jurisdiction over the non-resident Defendants based on their alleged contact with Virginia. For that purpose, the Court must first determine whether Virginia law authorizes jurisdiction; and second, whether a defendant has "certain minimum contacts with [Virginia] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice," so that personal jurisdiction over the non-resident defendant comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

---

[8] The NSI Service Agreement's forum selection clause defines "you" as "each customer . . . and its agents, including each person listed in your account information as being associated with your account." Doc. No. 1, Ex. 2.

8

*Consulting Eng'rs Corp.*, 561 F.3d at 277; *Wolf v. Richmond County Hosp. Auth.*, 745 F.2d 904, 909 (4th Cir. 1984). Here, when the two-step jurisdictional analysis is applied, the Court concludes that the Court cannot properly exercise personal jurisdiction over the Defendants under Virginia's long arm statute or the Due Process Clause.

*1. Application of Virginia's Long-Arm Statute*

Under the Virginia long-arm statute, Va. Code § 801-328.1(A)(1), a court "may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this Commonwealth."[9] Because Virginia's long arm statute construes "arising from" broadly, the primary issue is whether Defendants' alleged activity constitutes "transacting business." *See City of Virginia Beach, Va. v. Roanoke River Basin Ass'n*, 776 F.2d 484, 487 (4th Cir. 1985) ("In order for a cause of action to arise from business transacted in Virginia, the activities that support the jurisdictional claim must coincide with those that form the basis for the plaintiff's substantive claim."); *Production Group Intern., Inc. v. Goldman*, 337 F. Supp. 2d 788, 794 (E.D. Va. 2004) ("[p]ersonal jurisdiction may be conferred for a specific cause of action . . . by acts 'related to' the claim itself."). Under the long arm statute, "a single act by a nonresident which amounts to 'transacting business' in Virginia and gives rise to a cause of action may be sufficient to confer

---

[9] Plaintiff is not clear on which provision of Virginia's long arm statute it relies on in asserting this Court's jurisdiction over the Defendants. Plaintiff's brief in opposition only states that "Defendants have transacted and/or solicited business in Virginia by means of the ancortecmin.com website" without differentiating the analysis. Although the Court's analysis focuses on the transacting business theory, Va. Code § 801-328.1(A)(1), Plaintiff's possible reliance on Va. Code § 801-328.1(A)(4) is also to no avail. That provision states that a "court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to cause of action arising from the person's ... causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business ... in this Commonwealth." For the same reasons the Court concludes that Plaintiff's contacts with the Virginia are insufficient to establish that Defendants transacted business in Virginia, they are insufficient to establish that Defendants solicited business in Virginia.

9

jurisdiction upon [Virginia] courts." *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990). Nevertheless, a single act by a non-resident defendant should be "substantial," and demonstrate "purposeful activity." *See John G. Kolbe, Inc., v. Chromodern Chair Co.*, 211 Va. 736, 741 (1971) (finding that defendant had "voluntarily and purposefully availed itself to the privilege of conducting activities within Virginia which amounted to a substantial transaction of business in this state"); *DeSantis v. Hafner Creations, Inc.*, 949 F.Supp. 419, 424 (E.D. Va. 1996) (stating that a single act must be "significant" in order to confer jurisdiction).

The nature and quality of a defendant's business activity should be considered when determining whether a defendant's activity meets the "significance" requirement as no single element is absolute. *Production Group Intern., Inc. v. Goldman*, 337 F. Supp. 2d 788, 793 (E.D. Va. 2004); *compare Unidyne Corp. v. Aerolineas Argentinas*, 590 F. Supp. 391, 396 (E.D. Va. 1984) (holding "telex messages and letters negotiating a transaction are insufficient to form a basis for *in personam* jurisdiction.") *with English & Smith*, 901 F.2d at 39 (finding personal jurisdiction where out of state attorney retained co-counsel in Virginia, and corresponded via telephone and mail in connection with the retention) *and Peanut Corp. of Am. V. Hollywood Brands., Inc.* 696 F.2d 311, 314 (4th Cir. 1982) (contract modification that was addressed to and received in Virginia, telephonic negotiations that included at least one participant located in Virginia, and written communications sent to and received by recipients in Virginia constituted transacting business in Virginia).

Plaintiff alleges that its claims against Defendants arise out of Defendants' transaction of business in Virginia in the following ways: (1) Defendants registered and renewed their registration of websites ctiancor.com and ancortecmin.com with NSI, which is located in Virginia; and these registration agreements contain a forum selection clause that provide that

jurisdiction would lie with this Court in certain instances; (2) Defendants' joint venture, Ancor Tecmin, is a "global leader" whose "products are installed and operating in more than 20 countries in four continents, with a global market share above 70%"; and (3) Defendants' website ancortecmin.com is interactive as it contains a customer extranet that allows customers to download specific documents, including drawings, specifications, and so forth from its site, and thereby markets its products in international and interstate commerce to a global clientele, including residents of Virginia. Compl. ¶¶ 7, 11. There are no allegations that Defendants have offices, own property, or have employees or agents in Virginia.

The alleged activities do not establish a *prima facie* case for personal jurisdiction under the Virginia long arm statute. First, the NSI Registration Agreement between NSI and the former joint venture CTI-Ancor, by itself, does not satisfy Virginia's "transacting business" requirement. *See Elliot Mach. Corp., Inc. v. John Holland Party Ltd.*, 995 F.2d 474, 478-79 (4th Cir. 1993) (holding that a non-resident corporation whose only contact with the forum state was a single, short-term contract performed abroad was insufficient contacts with the forum state); *American Online, Inc., v. Huang*, 106 F. Supp. 2d 848, 855 (E.D. Va. 2000) (finding the act of registering a domain name with NSI as "difficult" to view as "transacting business" in the registrar's state of residence); *Heathmount A.E. Corp. v. Technodome.com*, 106 F. Supp. 2d 860, 864 (E.D. Va. 2000) (finding defendant's brief interaction with NSI's website to register a domain name stretches the scope of Virginia's long-arm statute too much).

Second, Defendant's operation of an international business that participates in the "global market" and markets its products in interstate commerce, including residents of Virginia, does not qualify as "transacting business" in Virginia; there is simply no allegation that the Plaintiff engaged in any Virginia based transaction with Defendants, nor that Defendants' website

resulted in business in Virginia. *See DeSantis*, 949 F. Supp. at 427 ("It is clear that a non-resident defendant's placement of a classified advertisement in a national publication and his response to an inquiry from a prospective buyer does not amount to "transacting business" in Virginia."); *Processing Research, Inc. v. Larson*, 686 F.Supp. 199, 122 (E.D. Va. 1988) (finding that defendant's national advertisement was an insufficient basis to find personal jurisdiction under § 8.01-328.1(A)(1)); *Williams v. Canon, Inc.*, 432 F.Supp. 376 (C.D. Cal. 1977) ("National advertising which happens to appear in a particular jurisdiction does not constitute transacting business in that jurisdiction").

Third, although Defendants' website ancortecmin.com is semi-interactive and accessible to residents in Virginia, its existence or use is insufficient to qualify as "transacting business" for the purposes of establishing personal jurisdiction over the Defendants. *See ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (finding a company must do something more than merely place information on the Internet). Rather, the issue before the Court is whether Plaintiff has proffered sufficient evidence to make out a *prima facie* case that Defendants "expressly aimed" its allegedly unlawful online conduct at Virginia.[10] *See Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 399 (4th Cir. 2003) (holding that a "generally accessible, semi-interactive Internet website" did not direct electronic activity into the forum state with the manifest intent of engaging in business in the forum state because, *inter alia*, there was evidence of only one online exchange with a resident of the forum state); *ESAB Group v. Centricut, Inc.*, 126 F.3d 617, 625-26 (4th Cir. 1997) (finding a

---

[10] "A State may, consistent with due process, exercise power over a person outside of the State when the person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the States, and (3) that activity creates, in a person within the States, a potential cause of action cognizable in the State's court. *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002).

company's sales activities "focusing generally on customers located throughout the United States and Canada without focusing on and targeting" forum state do not yield personal jurisdiction). Here, there is no allegation that Plaintiff's claims arise out of its use of the Defendants' website ancortecmin.com. Rather, Plaintiff's claim is that Defendants, acting entirely from Chile, improperly directed users from the website address ctiancor.com to their new joint venture website ancortecmin.com. According to the sworn affidavit of Victor M. Vidaurre, submitted by the Defendants in support of the Motion, of the 24 visits that came as such referrals from ctiancor.com, only one came from Virginia and it did not result in any business. Under these factors, Plaintiff has not provided any evidence that Defendants have "transacted business" or manifested an intent to engage in business in Virginia.

Because Plaintiff has not made a *prima facie* case for personal jurisdiction over Defendants under Virginia's long-arm statue, no further inquiry is required. Nevertheless, it is also clear that the exercise of such jurisdiction would not be consistent with Due Process Clause of the Fourteenth Amendment.

2. *Due Process Analysis*[11]

In order for this Court to exercise personal jurisdiction over the Defendants, the Defendants must "have certain minimum contacts with [Virginia] such that the maintenance of a suit does not offend 'traditional notions of fair play and substantial justice.'" *See Int'l Shoe Co.*

---

[11] Plaintiff also claims that jurisdiction would be proper in this Court pursuant to Fed. R. Civ. P. 4(k)(2). The following requirements must be met to obtain jurisdiction under Rule 4(k)(2): (1) the suit must arise under federal law, (2) defendant must not be subject to personal jurisdiction in any state, and (3) defendant must have contacts with the United States consistent with the Constitution and laws of the United States. *Saudi v. Northrop Grumman Corp.*, 427 F.2d 271, 275 (4th Cir. 2005) (quoting Fed. R. Civ. P. 4(k)(2)). Plaintiff's claim under Rule 4(k)(2) has no merit because Plaintiff cannot both assert that jurisdiction would be proper under Fed. R. Civ. P. 4(k)(2) and request that the Court transfer the case to the Western District of Pennsylvania if the Court should find no personal jurisdiction in this District.

*v. Washington*, 326 U.S. 310, 316 (1945). A non-resident defendant may be subject to either general or specific jurisdiction. *See Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 (1984). General jurisdiction permits a court to exercise personal jurisdiction over a non-resident defendant for non-forum related activities when defendant has engaged in "systematic and continuous" activities in the forum state that are "very substantial." *ESAB Group*, 126 F.3d at 623 (quoting 4 Wright & Miller, *Federal practice & Procedure* § 1067, at 295-98 (1987)). In the absence of general jurisdiction, specific jurisdiction permits a court to exercise personal jurisdiction over a non-resident defendant for forum-related activities where the defendant satisfies the minimum contacts framework of *International Shoe*. *See Int'l Shoe*, 326 U.S. at 316.

Here, Plaintiff relies on the same conduct that this Court has rejected as the basis for personal jurisdiction under Virginia's long arm statute. None of the activities alleged sufficiently establish that the defendants have "purposefully availed themselves" of the privilege of conducting business in Virginia, under either a specific or general jurisdictional analysis. *See J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780, 2785 (2011).

### C. Transfer of Venue

The court has discretion pursuant 28 U.S.C. § 1406(a)[12] to transfer the action, if it is "in the interest of justice." *See The Hipage Co., Inc. v. Access2Go, Inc.* 589 F. Supp. 2d 602, 611 (E.D. Va. Nov. 20, 2008) (finding that even if dismissal is appropriate under Rule 12(b)(3), the court has discretion under § 1406(a) to transfer the action if it is "in the interest of justice"). Furthermore, a court need not have personal jurisdiction over a defendant to transfer a case

---

[12] "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

pursuant to § 1406(a). *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962); *O'Neal v. Hicks Brokerage Co.*, 537 F.2d 1266, 1268 (4th Cir. 1976). For the reasons stated below, the Court finds it in the interest of justice to transfer the *in personam* claims to the United States District Court for the Western District of Pennsylvania for recommended referral to the Bankruptcy Court in that District pursuant 28 U.S.C. § 1406(a).

Plaintiff seeks to enforce the rights that were determined as a result of the bankruptcy proceedings in the United States Bankruptcy Court for the Western District of Pennsylvania ("Bankruptcy Court"), specifically the 2004 Bankruptcy Order and the 2005 Bankruptcy Order, which among other things, restrained each party from using intellectual property that was owned by the other party, the very issues involved in this suit. In fact, Plaintiff asks this Court to find the Defendants in contempt of court (Count IV) based on these orders. Furthermore, the Bankruptcy Court retains jurisdiction to enforce its orders: "In the event of non-compliance by any part with any of [the orders'] obligations. . . [it] may be enforced by such further proceedings as are required to enforce the Orders and obtain compliance or performance and such proceedings may be brought in this or any other appropriate court with jurisdiction over the party against whom enforcement in sought." Order, February 2, 2005, Doc. No. 1-4, ¶ 3, Ex. D.

Additionally, the parties' 2005 Agreement, based on which the Plaintiff asserts a breach of contract claim, was signed by individuals representing CTI, Ancor, and Ancor Tecmin, and required the parties to comply with the orders of the Bankruptcy Court, to file a notice of compliance with the Bankruptcy Court, and contains a permissive forum selection clause specifying that proceedings to enforce the Settlement Agreement may be brought in the Bankruptcy Court for the Western District of Pennsylvania. Doc. No. 1-5, Ex. E. For these

reasons, it appears that the Western District of Pennsylvania would likely have personal jurisdiction over the Defendants.

The Court concludes that the interests of justice require transfer of the claims against Anticorrosives Industriales, Ltda., Ancor Tecmin, S.A., Tecmin, S.A., and Marcello Migone to the United States District Court for the Western District of Pennsylvania for recommended referral to the Bankruptcy Court in that District.

## V. CONCLUSION

The Court finds that Plaintiff has not made a *prima facie* showing that this Court has personal jurisdiction over Defendants and venue is not proper in this Court. However, the Court concludes that the interest of justice require transfer of the *in personam* claims to the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1406(a). Thus, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 14] is DENIED. It is unnecessary to consider whether the challenged conduct states a claim pursuant to Fed. R. Civ. Proc. 12(b)(6).

The Clerk is directed to forward copies of this Memorandum Opinion to all counsel of record.

An appropriate Order will issue.

/s/
_____
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
August 19, 2011